# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. Bennie R. Weiser, Jr. an individual, and | ) ) ) | |
| 2. Latrice (Alverson) Weiser, an individual, | ) ) ) | Case No. 17-CV-673-GKF-FHM |
| Plaintiffs/Counter-Defendants | ) ) | |
| vs. | ) ) | |
| 1. Pathway Services, Inc., a domestic for profit business corporation, | ) ) ) | |
| Defendant/Counter-Plaintiff. | ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO EXCLUDE REPORT AND TESTIMONY OF DEFENDANT'S EXPERT WITNESS RANDALL G. O'NEAL

COMES NOW the Defendant, Pathway Services Inc., and respectfully submits response to Plaintiffs' motion to exclude report and testimony of Defendant's expert witness as follows:

### INTRODUCTION

The Plaintiffs filed a previous motion seeking to have all reports and testimony of the Defendant's expert witness Mr. O'Neal excluded. (DOC 24). United States Magistrate Judge Frank H. McCarthy denied the previous motion. (DOC 34)

## ARGUMENTS AND AUTHORITIES

Substantial portions of Plaintiffs' brief is devoted to arguing how and why specific criteria established in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993) or <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137 (1999), must be applied here and why Defendant's expert does not meet the criteria. Thus, any discussion of these principles in this case must begin with the understanding that the United States Court of Appeals for the Tenth Circuit rejects the concept that, in considering a <u>Daubert</u> challenge, the Trial Court must apply a rigid or artificial litmus test. This point is explained in <u>Goebel v. Denver & Rio Grande Western R.R. Co.</u>, 215 F.3d 1083 (10th Cir. 2000) as follows:

> ***Our holding recognizes that the district court need not "recite the <u>Daubert</u> standard as though it were some magical incantation," <u>Ancho v. Pentek Corp.</u>, 157 F.3d 512, 518 (7th Cir. 1998), or apply all of the reliability factors suggested in <u>Daubert</u> and <u>Kumho</u>. The gatekeeper inquiry under Rule 702 is ultimately a flexible determination. <u>Kumho Tire</u>, 119 S.Ct. at 1175. But we specifically hold that a district court, when faced with a party's objection, must adequately demonstrate by specific findings on the record that it has performed its duty as gatekeeper. [fn2]***
> [215 F.3d 1083, 1088]

The Court of Appeals also discusses the manner in which the district court may perform the gatekeeper duties. The district court is not required to conduct a hearing but may satisfy its gate role as follows:

> ***. . . the district court may also satisfy its gatekeeper role when asked to rule on a motion in limine, on an objection during trial, or on a post-trial motion so long as the court has sufficient evidence to perform "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." <u>Daubert</u>, 509 U.S. at 597.***
> [215 F.3d 1083, 1087]

In considering the arguments advanced by the Plaintiffs regarding the Defendant's expert opinions, this Court should meet the gatekeeping responsibilities by determining whether the expert testimony of Mr. O'Neal *"rests on a reliable foundation and is relevant to the task at hand."* In analyzing whether the expert testimony rests on a reliable foundation, it is helpful to remember the history and evolution of the Daubert analysis. In Ruiz-Troche v. Pepsi Cola of Puerto Rico, 161 F.3d 77 (1st Cir. 1998), the Court of Appeals reviews this history:

> *We start with an historical perspective. Prior to Daubert, courts and commentators regarded Frye v. United States, 293 F. 1013 (D.C. Cir. 1923), as the watershed case on the admission of expert opinion testimony. Under Frye, the admissibility of an expert opinion or technique turned on its "general acceptance" vel non within the scientific community. Id. at 1014. Daubert tackled the question of whether the Frye standard survived the passage of the Federal Rules of Evidence (and, in particular, Rule 702) and answered that question in the negative, holding that Rule 702 displaced the Frye test. See Daubert, 509 U.S. at 587-89.*
> [161 F.3d 77, 80]

This historical perspective is helpful because we are reminded that it is not necessary to demonstrate that the opinions expressed by the Defendant's expert are "generally accepted" by the scientific community. In fact, the United States Court of Appeals for the First Circuit instructs that:

> *Trial judges cannot abdicate the responsibility for making those judgments by delegating them to the scientific community.*
> [161 F.3d 77, 81-82]

This holding by the Court of Appeals is especially significant in this case because, unfortunately, the scientific community is unaware of the provisions and interpretations of the FSLA, especially 29 CFR 785 and 29 CFR 778 regarding overtime. Comparison with in Kumho Tire Co., *supra,* is helpful. The United States Supreme Court explains that the reliable foundation analysis must focus on the word "knowledge" in Rule 702. The Court reasoned:

> *In <u>Daubert</u>, the Court specified that it is the Rule's word "knowledge," not the words (like "scientific") that modify that word, that "establishes a standard of evidentiary reliability." 509 U.S., at 589-590. Hence, as a matter of language, the Rule applies its reliability standard to all "scientific," "technical," or "other specialized" matters within its scope.*
> [526 U.S. 137, 145]

And what is this Court to view as "specialized knowledge" as it relates to this case and the attack on Defendant's expert? Mr. Randy O'Neal is perhaps the epitome, the description of specialized knowledge in keeping with the explanation by Justice Leonard Hand. The expert witness has spent more than 40 years engaged in the specific profession as is involved here. How does the U.S. Department of Labor apply the governing principals of wage and hour principles? How can we be assured of the reliable foundation? By applying the specialized experience offered here by expert witness O'Neal. United States Supreme Court provides this further guidance:

> *Experts of all kinds tie observations to conclusions through the use of what Judge Learned Hand called "general truths derived from . . . specialized experience." Hand, Historical and Practical Considerations Regarding Expert Testimony, 15 Harv. L. Rev. 40, 54 (1901). And whether the specific expert testimony focuses upon specialized observations, the specialized translation of those observations into theory, a specialized theory itself, or the application of such a theory in a particular case, the expert's testimony often will rest "upon an experience confessedly foreign in kind to [the jury's] own." Ibid.*
> [526 U.S. 137, 148-149]

In analyzing the Plaintiffs' attack on the Defendant's expert, this Court should consider Judge Learned Hand's criteria of "specialized experience" and whether the expert testimony will rest on experience foreign to that of the jury so that it will be helpful to the jury. Defendant's expert certainly meets this criteria and Mr. O'Neal clearly has substantial "specialized experience" in the heat of battle in wage and hour issues. His specialized experience involves the precise issues involved here - overtime pay. The expert testimony rests on a reliable foundation. <u>Goebel</u>, *supra*. Moreover, the experience regarding wage and Hour issues are foreign to experiences of the jury.

### *IS THE DEFENDANT'S EXPERT REALLY A WITCH DOCTOR WITH A OUIJA BOARD?*

The criticisms hurled at Mr. O'Neal by the Plaintiffs would lead one to believe that he must be a witch doctor with a OUIJA Board. However, even a cursory look reveals that his qualifications are impressive and meaningful. His expert witness report reveals that he was employed by the U.S. Department of Labor, Wage & Hour Division for forty years. Of that time period, he spent fifteen (15) years as an investigator in two states. Perhaps most important, though, is the fact that his area of concern was the determination of and computation of proper overtime. This is, after all, the central issue here. It was his expertise and experience, apparently, that caused the U.S. Department of Labor to honor him by selecting him as the leader of a special team that conducted accountability reviews or audits of each district office in the region with regard to wage and hour issues. These experiences are meaningful and help transform Mr. O'Neal into a credible expert whose testimony rests on a reliable foundation. In his deposition the Plaintiffs' attorney did find one important issue and he testified as follows concerning that issue:

> Q.   *Can you describe it in general detail - - well, let me give you an easier question. Can you give me the first thing that a Plaintiff would need to do prior to January of '17 to report their hours worked? The very first thing?*
> *Mr. Wilkinson:       Object to form.*
> A.   *First thing would be they would need to understand what an hour worked in under the FLSA.*
>                                          *[Deposition, Randall O'Neal, p. 31-32, Exhibit 1]*

Inexplicability, Plaintiffs' counsel did not even attempt to follow up to determine from the expert witness what an hour worked is under the FLSA. Nevertheless, it is clear to see that the expert's

testimony will be important testimony. Clearly such testimony will be important and will aide the jury.

## CONCLUSION

The Plaintiff's expert is both necessary and helpful. The Motion should be denied.

Respectfully submitted,

Wilkinson Law Firm

s/Bill V. Wilkinson
Bill V. Wilkinson, OBA 9621
4812 East 81st Street, Suite 302
Tulsa, OK 74137
918-663-2252 Phone
918-663-2254 Fax
wilklaw@wilklaw.com
Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of February, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

David R. Keesling
Timothy S. Kittle
6660 South Sheridan Road, Suite 250
Tulsa, OK 74137
(918) 924-5101 Telephone
(918) 512-4888 Facsimile
dkeesling@dbllawyers.com
tkittle@dbllawyers.com
Attorneys for Plaintiffs

s/Bill V. Wilkinson
Bill V. Wilkinson